[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15007

_____

D.C. Docket No. 1:16-cr-20769-DMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERT KENNETH DECKER,
a.k.a. DigitalPossi2014,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 27, 2020)

Before JORDAN and JILL PRYOR, Circuit Judges, and COOGLER,* District
Judge.

COOGLER, District Judge:

---

* Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama,
sitting by designation.

Robert Kenneth Decker ("Decker") appeals his convictions, following a guilty plea, for conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h). Decker argues for the first time on appeal that the district court erred by failing to ensure that a factual basis existed for his guilty plea as required by Federal Rule of Criminal Procedure 11(b)(3).[1]

After careful review and having had the benefit of oral argument,[2] we conclude that Decker waived his right to appellate review of the factual sufficiency of his plea by failing to object to the magistrate judge's report and recommendation that the district court accept his guilty plea. We nonetheless review Decker's Rule 11(b)(3) claims for plain error under an exception to the waiver rule, but we conclude that they fail under plain-error review. Accordingly, we affirm Decker's convictions and sentence.

## I.    Background

### A.    Course of Proceedings Below

---

[1]    Decker raised a second issue in his initial brief, arguing that the district court violated Fed. R. Crim. P. 32 by failing to ensure that he had reviewed the presentence investigation report ("PSI") prior to sentencing. On June 12, 2018, this Court granted in part and denied in part the United States' motion to dismiss this appeal, holding specifically that this second issue was barred by the appeal waiver in Decker's plea agreement.

[2]    On December 5, 2019, the Government notified the Court that the docket entry included in the appellate index that was identified as the transcript of Decker's sentencing hearing was not in fact the correct transcript but was rather a transcript of an unrelated proceeding. The Government moved to supplement the record with the correct sentencing hearing transcript. The motion is **GRANTED**.

In October 2016, a grand jury in the Southern District of Florida returned an indictment against Decker based upon allegations of unlawful behavior conducted over a collection of encrypted digital networks known as the "dark web." The indictment charged Decker with conspiracy to distribute a controlled substance, which was a mixture and substance containing a detectable amount of hydromorphone, hydrocodone, and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count 1), and conspiracy to launder the proceeds of his drug offenses, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h) (Count 2).

On December 12, 2016, Decker pled guilty to both counts of the indictment before a magistrate judge and pursuant to a written plea agreement. The magistrate judge issued a report and recommendation recommending that the district court accept Decker's guilty plea as to both counts. The district court adopted the magistrate judge's report and recommendation on February 14, 2017.

On February 16, 2017, the district court sentenced Decker to 140 months' imprisonment, followed by a three-year supervised release term. Decker did not file a timely notice of appeal, but he filed a motion pursuant to 28 U.S.C. § 2255 explaining that his counsel had failed to file a notice of appeal despite Decker's instructions that he do so. As a result, the district court entered a new judgment of conviction, re-imposing the same sentence, which permitted Decker to file a timely notice of appeal. Decker remains incarcerated.

**B.     The Factual Proffer**

According to the agreed-to factual proffer presented at Decker's change of plea hearing, the federal charges against him arose from a Drug Enforcement Administration ("DEA") investigation into a narcotics vendor, known as "DigitalPossi2014," who had been illegally selling narcotics online using the services of several dark web internet marketplaces. The factual proffer explained that "[d]ark [w]eb marketplace[s] allow vend[o]rs, in conspiracy with the unknown marketplace administrators, to distribute controlled substances anonymously online and launder the proceeds through a series of complex bitcoin transaction[s] designed to conceal the nature, source, and control of the funds."

The proffer explained that in order to investigate DigitalPossi2014, DEA agents working undercover bought hydrocodone and hydromorphone pills from DigitalPossi2014 online and received the purchased narcotics by U.S. Mail at mailboxes in the Southern District of Florida. The drugs were purchased online from Nucleus Market, Dream Market, and AlphaBay Market, all anonymous dark web internet marketplaces, using bitcoin to pay for the drugs. In the factual proffer, Decker admitted that DigitalPossi2014 had "conducted thousands of transactions on numerous Dark Web marketplaces" selling prescription opiate pills. He further admitted that DigitalPossi2014 had conducted 10,738 transactions on Alphabay Market selling opiate pills including hydrocodone, oxycodone, OxyContin,

4

Percocet, hydromorphone, and morphine.

Decker also admitted in the factual proffer that DigitalPossi2014 had placed an advertisement in a medical marijuana marketplace and provided his cellphone number. The advertisement stated, "I'm on the dark web and I sell a lot on there," noting "I have nothing but great reviews." The DEA tracked the telephone number listed in the advertisement to Decker's address in Detroit, Michigan, and traced the packages of controlled substances they had received from DigitalPossi2014 to a post office box issued to Decker. Cars registered to Decker and his wife were in the driveway at Decker's Detroit address, and a review of Decker's finances revealed that Decker had spent over $15,000 on www.stamps.com and at the United States Post Office since March 2014.

Decker's financial records also showed that Decker had a bitcoin account with Coinbase, a bitcoin wallet host and exchanger, under the name DigitalPossi2014. The factual proffer explained that "[a] preliminary analysis of the bitcoin block chain revealed that the majority of Decker's incoming bitcoin transactions in his Coinbase account originated from dark net markets such as Agora Marketplace, Nucleus Market, and Evolution Marketplace." The investigation also revealed that Decker used LocalBitcoins, a bitcoin exchange often used by dark web members, to anonymously exchange his bitcoin drug proceeds for fiat currency.

5

The factual proffer further noted that Decker used the name "digitally possible" on public social media, and his e-mail address was "digitalpossi2014@yahoo.com." A search warrant executed at Decker's Detroit residence revealed mail packing materials and shipping labels with the P.O. Box number on the return label and handwritten notes containing drug quantities. The agents also seized Decker's computers and cell phones.

## C.    The Plea Colloquy

Prior to accepting Decker's guilty plea, the magistrate judge asked Decker a series of questions to ensure that Decker understood the proceedings, was not under the influence of any drugs, had received advice of counsel, and was voluntarily agreeing to plead guilty. Decker confirmed that he was not under the influence of any drugs, that he had received and read the indictment and had discussed it with his attorney, and that he was fully satisfied with the legal representation he had received. He also acknowledged that he had read and reviewed the written plea agreement with his attorney before signing it and understood the terms of the agreement.

The magistrate judge further read the charges to Decker who confirmed that he was guilty of the charges and had no questions about them. The magistrate judge then asked that the factual proffer that the parties had agreed to be entered into the record in lieu of Decker describing the charges, and both parties agreed. At

6

the conclusion of hearing, when asked whether he was guilty of the charges set out in the indictment, Decker again confirmed that he was guilty. Thereafter, the magistrate judge stated his finding that "the defendant is fully competent and capable of entering an informed plea; that the defendant is aware of the nature of the charges and the consequences of his pleas of guilty; and the pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing all of the material elements of the offenses."

In the report and recommendation filed by the magistrate judge after the change of plea hearing, the magistrate judge advised that he had conducted the plea colloquy with Decker "in conformity with the requirements of Rule 11 of the Federal Rules of Criminal Procedure." Among other things, the report and recommendation further stated that the factual proffer, made part of the record and executed by the Government, Decker, and his counsel, included all the essential elements of the offenses to which he was pleading guilty. The report and recommendation noted that Decker had 14 days in which to file any written objections to the report and recommendation with the district court and warned that failure to file timely objections may bar Decker from attacking on appeal the factual findings contained within the report and recommendation. Decker did not file any objections.

## II.    Legal Standards

Decker argues for the first time on appeal that the district court failed to comply with Rule 11(b)(3), which requires the district court, before accepting a guilty plea, to determine that there is an independent factual basis for the plea. Decker contends that, with regard to Count 1 of the indictment, which charged a violation of 21 U.S.C. §§ 841(a)(1), 846, conspiracy to distribute controlled substances, the factual proffer failed to identify a co-conspirator, an agreement, or the "mixture" of narcotics that he agreed to distribute. He argues with regard to Count 2, which charged conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h), that the proffer not only failed to identify a co-conspirator, but that it also lacked support in fact for any of the elements of substantive money laundering. Decker thus contends that his convictions must be vacated, and his case remanded, to give him an opportunity to plead anew.

Generally, where a defendant fails to raise Rule 11 violations in the district court, this Court reviews the district court's findings for plain error. *See United States v. Vonn*, 535 U.S. 55, 58 (2002); *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285–86 (11th Cir. 2015). However, pursuant to Federal Rule of Criminal Procedure 59(b)(2),[3] a defendant who fails to make timely objections to a

---

[3]    Rule 59(b)(2) states:

Objections to Findings and Recommendations. Within 14 days after being served with a copy of the recommended disposition, or at some other time the court sets, a party may serve and file specific written objections to the proposed findings and

magistrate judge's report and recommendation within 14 days of the issuance of the report waives his right to appellate review, even for plain error. *See also United States v. Garcia-Sandobal*, 703 F.3d 1278, 1283 (11th Cir. 2013) (holding that the defendant waived his argument that the district court should not have accepted his guilty plea by failing to file objections to the magistrate judge's report and recommendation that the district court accept his plea); *United States v. Latchman*, 512 F. App'x 908, 909 (11th Cir. 2013) (per curiam) (relying upon Rule 59(b)(2) and *Garcia-Sandobal* to hold that the waiver applies to a defendant's challenge to the factual basis of her guilty plea pursuant to Rule 11(b)(3)).[4]

Eleventh Circuit Rule 3-1 echoes the warning contained in Rule 59(b)(2), stating:

> A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.

---

recommendations. Unless the district judge directs otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient. Failure to object in accordance with this rule waives a party's right to review.

[4]    Unpublished opinions are not considered binding precedent but may be cited as persuasive authority insofar as their legal analysis warrants. *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) (citing *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004)).

11th Cir. R. 3-1. But even without a proper objection, Rule 3-1 provides that a "court may review on appeal for plain error if necessary in the interests of justice." *Id. See also Padgett v. United States*, 791 F. App'x 51, 53 n.1 (11th Cir. 2019) (per curiam) (relying upon the waiver provision in Rule 3-1 to review unobjected-to claims in a 28 U.S.C. § 2255 proceeding for plain error only).[5]

Based on the foregoing authority, we conclude that Decker waived his right to appellate review of the factual sufficiency of his plea by failing to file written objections to the magistrate judge's report and recommendation, which stated that the factual proffer contained all essential elements of the offenses charged. However, we believe that the instant case warrants application of the "interests of justice" exception found in Rule 3-1, primarily because the Government did not raise waiver pursuant to Rules 59(b)(2) or 3-1 in its initial brief, instead arguing that plain-error review applied to Decker's claims, and only attempted to raise the waiver defense through the filing of a letter several days before oral argument.[6] Therefore, we will examine Decker's Rule 11(b)(3) claims for plain error.

Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the

---

[5]    *See* note 4, *supra*.

[6]    New arguments are generally waived when not raised in a party's initial brief. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 n.4 (11th Cir. 2004).

[district] court's attention." Fed. R. Crim. P. 52(b). To prevail on plain error review, a defendant must show: 1) "an error that has not been intentionally relinquished or abandoned"; 2) that the error was "plain—that is to say, clear or obvious"; and 3) that the error "affected the defendant's substantial rights." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (citing *United States v. Olano*, 507 U.S. 725, 732–34 (1993)). Once these conditions are met, we may "exercise [our] discretion to correct the forfeited error if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736). "Meeting all four prongs is difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

For an error to be plain, it must be clear or obvious under current law, *see Olano*, 507 U.S. at 734, "rather than subject to reasonable dispute," *Puckett*, 556 U.S. at 135. "[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lange*, 862 F.3d 1290, 1296 (11th Cir. 2017) (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam)). If there is not a case squarely on point, however, there may be plain error where a decision "appears to be particularly egregious, and strikes at a core principle embodied in the violated law or rule." *United States v. Dean*, 487 F.3d 840, 847 (11th Cir. 2007).

Whereas the standard for a plain error is high, the evidentiary threshold of Rule 11(b)(3) is low. A district court's finding of a factual basis for a guilty plea under Rule 11(b)(3) does not require "uncontroverted evidence of guilt" but only "evidence from which a court could reasonably find that the defendant was guilty." *United States v. Rodriguez*, 751 F.3d 1244, 1255 (11th Cir. 2014). *See also* 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 180 (5th ed. 2020) ("The quantum of evidence needed to supply a factual basis [under Rule 11(b)(3)] takes less evidence than would be needed to sustain a conviction at trial; something closer to a rational basis is all that courts may require.").

As we explain below, Decker cannot show that the district court committed plain, i.e., "clear" or "obvious," error in concluding that there was an independent factual basis for his guilty plea to Counts 1 and 2. *See Olano*, 507 U.S. at 734. Thus, we need not address the other prongs of the plain-error inquiry.

## III.   Application

### A.   Count 1

Decker first argues that that the factual proffer failed to establish a basis for his guilty plea to Count 1, conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 846, because the proffer did not identify any known conspirator or establish the existence of any unknown conspirator with whom he agreed to sell drugs. To obtain a conspiracy conviction, the government

12

must prove an agreement between two or more persons to commit a crime. *See United States v. Ndiaye*, 434 F.3d 1270, 1294 (11th Cir. 2006). "While . . . 'an individual can be convicted of conspiracy with unknown persons referred to in the indictment,'" a conspiracy conviction cannot be sustained when "the government has not proven *the existence of* unknown persons." *United States v. Arbane*, 446 F.3d 1223, 1228 n.8 (11th Cir. 2006) (emphasis added) (quoting *United States v. Figueroa*, 720 F.2d 1239, 1244–45, 1245 n.8 (11th Cir. 1983)).

We find no plain error in the district court's conclusion that the factual proffer sufficiently established that Decker conspired with unknown dark web marketplace administrators to illegally distribute controlled substances. Decker agreed in the proffer that the Government could prove beyond a reasonable doubt that the user "DigitalPossi2014" repeatedly sold controlled substances on dark web marketplaces, which "allow[ed] vend[o]rs, in conspiracy with the unknown marketplace administrators, to distribute controlled substances anonymously online and launder the proceeds through a series of complex bitcoin transaction[s] designed to conceal the nature, source, and control of the funds." He also admitted that the Government could prove beyond a reasonable doubt facts that would support a conclusion that he was the person operating the "DigitalPossi2014" accounts on those dark web marketplaces.

While Decker now complains that the factual proffer did not identify any specific acts of the dark web marketplace administrators or communications between the administrators and Decker, such specificity is not required to establish a conspiracy. "The existence of an agreement may be proven by circumstantial evidence, including 'inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'" *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (quoting *United States v. Tamargo*, 672 F.2d 887, 889 (11th Cir. 1982)). The Government may establish the defendant's knowledge of an illegal agreement by showing that the defendant knew the conspiracy's essential objectives. *United States v. Russell*, 703 F.2d 1243, 1250 (11th Cir. 1983).

It was not irrational for the district court to have inferred from the factual proffer that Decker knowingly and intentionally used dark web marketplaces that were deliberately established by unknown administrators to promote and assist his illegal narcotics sales, protect his identity, and conceal the source of the payments he received. Like any other large-scale drug trafficker, Decker needed the assistance of knowledgeable distributors to make sales. Without the knowing assistance of the administrators of those websites named in the factual proffer, Decker would not have admittedly sold more than 10,000 illegal pills and received payment for those transactions while remaining anonymous. *See United States v. Reeves*, 742 F.3d 487, 500 (11th Cir. 2014) ("[E]fforts to conceal a conspiracy may

14

support the inference that a defendant knew of the conspiracy and joined it while it was in operation."). The factual proffer provided sufficient facts from which the district court could reasonably find that Decker conspired with unknown dark web administrators to sell drugs.

Decker also argues that because the indictment charged that he conspired to sell "a mixture and substance containing a detectable amount of hydromorphone, hydrocodone, and oxycodone," but the factual proffer did not specifically refer to any "mixture," the factual proffer did not establish that Decker distributed the same mixture of compounds charged in the indictment. We disagree.

The factual proffer reflected Decker's admission that he sold "prescription opiate pills" including hydromorphone pills, hydrocodone pills, oxycodone pills, and pills containing other specified chemical compounds online. It correctly specified the quantities of hydromorphone, hydrocodone, oxycodone, and other controlled substances that Decker sold. From the admission that Decker sold pills containing these compounds, a district court could reasonably find that Decker conspired to distribute mixtures containing these substances. And Decker offers no authority or citation for the proposition that a factual proffer must specifically describe a "mixture" of compounds, especially when the indictment also referred to a "substance." The absence of authority supporting Decker's position prohibits us from finding that a plain error occurred. *See Lange*, 862 F.3d at 1296. Nor does

15

Decker challenge the fact that he sold the drugs identified in the factual proffer. Under these circumstances, the district court did not plainly err in accepting the factual proffer's detailed description of the controlled substances that Decker conspired to and did sell.

### B.    Count 2

Decker also argues that that the factual proffer failed to establish a basis for his guilty plea to Count 2, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h), because, as he argued with regard to Count 1, the proffer did not identify any co-conspirator, either known or unknown, with whom he agreed to launder the proceeds of his drug sales. To establish a conspiracy to commit money laundering under 18 U.S.C. § 1956(h), the Government must show "(1) agreement between two or more persons to commit a money-laundering offense; and (2) knowing and voluntary participation in that agreement by the defendant." *United States v. Broughton*, 689 F.3d 1260, 1280 (11th Cir. 2012).

We find no plain error in the district court's conclusion that there was a factual basis to support that Decker was guilty of conspiring with unknown dark web marketplace administrators to launder drug proceeds. The factual proffer stated that the dark web, which Decker admittedly utilized, "allow[s] vend[o]rs, in conspiracy with the unknown marketplace administrators, to . . . launder the proceeds [of drug sales] through a series of complex bitcoin transaction[s]

16

designed to conceal the nature, source, and control of the funds." The proffer also included an analysis of Decker's financial records that showed that Decker had a bitcoin account under the username DigitalPossi2014 with Coinbase, a bitcoin wallet host and exchanger, and that most of his incoming bitcoin transactions within Coinbase originated from dark web markets such as Agora Marketplace, Nucleus Market, and Evolution Market. Decker also admitted that he then would use LocalBitcoins, a bitcoin exchange that was frequently used by dark web vendors, to exchange bitcoin for fiat currency. Although Decker complains that the proffer did not identify any specific bitcoin transaction, it may rationally be inferred that the administrators of these dark web marketplaces went to great lengths to assist Decker and others in concealing the true source of their drug proceeds by using bitcoin and making it impossible for law enforcement to discern who Decker sold drugs to and how much he received on each sale. Taken together, the dual efforts of Decker and the marketplace administrators to conceal the source of drug sale proceeds allows the reasonable conclusion that Decker engaged in a conspiracy with administrators to commit money laundering.

Decker also contends that the factual proffer failed to establish any of the four elements of the substantive money laundering offense. To be guilty of money laundering, a defendant must have

> (1) knowingly conducted a "financial transaction," (2) which he knew involved funds that were the proceeds of some form of unlawful

17

activity, (3) where the funds involved in the financial transaction in fact were the proceeds of a "specified unlawful activity," and (4) that the defendant engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity.

*United States v. Tarkoff*, 242 F.3d 991, 994 (11th Cir. 2001) (citing *United States v. Majors*, 196 F.3d 1206, 1212 (11th Cir. 1999)).

With regard to the first three elements, the proffer established that Decker used bitcoin, that most of his bitcoin transactions originated from dark web marketplaces such as Agora Marketplace, Nucleus Market, and Evolution Marketplace, and that his outgoing bitcoin transactions went to a peer-to-peer exchange often utilized by vendors to anonymously exchange drug proceeds for fiat currency. Further, the proffer established that DEA agents purchased controlled substances from Decker on Nucleus Market and other dark web marketplaces in exchange for bitcoin. The proffer thus connected Decker's use of the dark web to his sale of drugs for bitcoin. The district court could have reasonably determined that Decker knew his bitcoin transactions on the dark web involved drug proceeds.

Decker also argues that the use of bitcoin does not suffice to demonstrate concealment, the fourth element of money laundering. While one's use of bitcoin as a monetary instrument, alone, does not *ipso facto* mean that one engaged in a financial transaction related to unlawful activities, the factual proffer here

18

established not only that Decker used bitcoin but also that he used bitcoin to sell drugs to undercover DEA agents, that he sold drugs on marketplaces that vendors frequently use to launder drug proceeds, and that his outgoing bitcoin transactions were sent to a peer-to-peer exchange frequently used to conceal the origin of the bitcoin funds by trading anonymously for fiat currency.[7]

Decker's final argument is that the factual proffer failed to show any financial transaction separate and apart from the underlying drug sales. *See Majors*, 196 F.3d at 1212 ("A violation of the concealment provision must 'follow in time' the completion of the underlying transaction as an activity designed to conceal or disguise the origins of the proceeds." (quoting *United States v. Dimeck*, 24 F.3d 1239, 1246 (10th Cir. 1994)). We disagree with Decker's argument. The proffer established distinct transactions to conceal illicit drug proceeds. The proffer described how the dark web marketplaces not only help vendors distribute drugs but also help them "launder the proceeds through *a series of* complex bitcoin transaction[s] designed to conceal the nature, source, and control of the funds." The proffer further established that Decker sent outgoing bitcoin transactions to LocalBitcoins, a "peer-to-peer exchange often utilized by dark web vend[o]rs to anonymously exchange bitcoins drug proceeds for fiat currency." Thus, the district

---

[7]   Relatedly, Decker argues, almost in passing, that "the money laundering statute does not encompass financial transactions in bitcoins." As Decker admits, no court has adopted this argument. So even assuming there was error, it was not plain.

court could have reasonably concluded that Decker engaged in a series of transactions in which he first anonymously exchanged drugs for bitcoin, then anonymously exchanged bitcoin for fiat currency to conceal the origin of the funds.

## III.   Conclusion

Because Decker failed to object to the magistrate judge's report and recommendation, he waived the ability to challenge the district court's acceptance of that recommendation, and there is no basis to find plain error for purposes of Rule 3-1's "interests of justice" exception. Accordingly, the judgment of the district court is

**AFFIRMED.**